*Donald Poe,* for petitioners and appellants.

*Warner, Warner, Ragon & Smith,* for respondent and appellees.

'HARBERSON *v.* YOES

5-3893

Opinion delivered May 16, 1966

*Donald Poe,* for petitioners and appellants.

*Warner, Warner, Ragon & Smith,* for respondent and appellees.

CARLETON HARRIS, Chief Justice. This litigation involves the construction of Ark. Stat. Ann. § 27-301 (Repl. 1962). The facts are as follows:

Bernice Harberson, a resident of Scott County, Arkansas, while driving an automobile' owned by her husband, Lloyd Harberson, was involved in a collision with a truck operated by Ellis G. Yoes, the collision occurring in Scott County. Accompanying Yoes at the time of the collision was Charles Mankin. According to a complaint subsequently filed by the Harbersons, Mankin was on a joint venture with Yoes, and the truck bore signs of Yoes' Printing and Lithographing Company. The collision occurred on March 19, 1965.

On Thursday afternoon, March 25, 1965, Ellis Yoes, Charles Mankin, residents of Sebastian County, and the Franklin Printing Company, a corporation d/b/a Yoes Printing and Lithographing Company in Fort Smith (hereinafter called ''Respondents''), instituted their complaint in the Sebastian Circuit Court against Bernice and Lloyd Harberson (Fort Smith District). Summons'

and complaint were forwarded by mail to Clyde Hawkins, Sheriff of Scott County at Waldron, on the same day, along with a note, directing him to serve same on the Harbersons. Sheriff Hawkins received the summons and complaint when he went to his post office box in Waldron at 5:00 P.M., Saturday, March 27. The Harbersons were served later that day.

Mr. and Mrs. Harberson instituted suit against Yoes, Mankin and the printing company at 10:00 A.M. on Saturday, March 27, 1965, in the Circuit Court of Scott County, Arkansas. Summons and complaint were hand delivered by the Harbersons' attorney to the sheriff's office in Fort Smith at 12:45 P.M., and receipt was noted. Service on these defendants was obtained later on the same day. The Harbersons (hereinafter called "Petitioners") filed a motion in the Sebastian County Circuit Court to quash service and dismiss respondents' cause of action, alleging that no valid service had been obtained, and that the Sebastian County Circuit Court did not have jurisdiction; respondents filed a like motion in the Scott County Circuit Court. Consolidated hearings were subsequently held, and on December 13, 1965, orders were entered overruling the motion to quash and dismiss in the Sebastian County action, while similar motions by the respondents in the Scott County action were sustained. Petitioners seek a Writ of Prohibition to prevent the Sebastian Circuit Court from proceeding further in that county, and have appealed from the order issued by the Scott Circuit Court, sustaining the motion of the respondents.

The question before this court is whether the Sebastain County Circuit Court, or the Scott County Circuit Court, has jurisdiction over the subject matter asserted in the respective complaints of the petitioners and the respondents. Ark. Stat. Ann. § 27-301 (Repl. 1962), reads as follows:

"A civil action is commenced by filing in the office of the clerk of the proper court a complaint and causing

a summons to be issued thereon, and placed in the hands of the sheriff of the proper county or counties. If two (2) or more actions are commenced in different courts involving the same subject matter, where the venue is proper in each, then that court shall acquire jurisdiction, to the exclusion of the other, wherein a complaint was filed and a summons issued thereon, and first placed in the hands of the sheriff of the proper county or counties, irrespective of the time of service of summons. Each clerk of court shall indorse on each complaint the exact date and time of day when the complaint was filed and a summons issued thereon and each sheriff shall indorse on each summons the exact date and time of day when the summons was placed in his hands.''

As stated, the proof reflects that petitioners filed their complaint in the Scott County Circuit Court on Saturday, March 27, 1965, and counsel went to Fort Smith and personally delivered the summons and copy of complaint to the sheriff's office there at 12:45 P.M. Likewise, the proof reflects that respondents filed their complaint in the Sebastian County Circuit Court on March 25, and forwarded the summons and copy of complaint to the Scott County Sheriff on that date, by depositing same in the United States mail prior to 4:00 P.M. with adequate postage. Mail was picked up from the courthouse box in Fort Smith at 4:13 P.M., and again at 5:06 P.M., and arrived at the Fort Smith post office not later than 5:32 P.M. on March 25. All mail was worked before midnight, March 25. Gene Dunkin, Assistant Superintendent at this post office, testified that the mail chute in the courthouse has an air lock, and no one has access to it but the Post Office Department . . . There had been no complaints of letters being blocked in the chute . . . mail was picked up on March 25; all pickups were on schedule and arrived at the post office on schedule . . . mail would leave Fort Smith at 8:30 P.M. and arrive at Waldron at 6:50 A.M. on March 26 . . . mail would also leave Fort Smith at 6:30 A.M. on March 26 and arrive at Waldron at 8:30 A.M. on March 26 . . . both mail runs departed on schedule

. . . no complaints were received and there was no notice of any missent letter. Mr. Dunkin testified that the post office keeps no records of specific mail except registered mail.

Wendell Henderson, Postmaster at Waldron, verified the arrival times of mail from Fort Smith. He testified that Sheriff Hawkins has a post office box, and comes in and picks up his mail. The postmaster stated that all mail from Fort Smith is put up in the boxes by 9:00 A.M., and there had been no difficulty in receiving Fort Smith mail prior to, or after, March, 1965. He said that no Fort Smith mail is placed in the post office boxes after 12:00 noon on Saturday, and that any out-of-town mail found in the box on Saturday afternoon, would necessarily have been placed there by noon on that date.

Sheriff Clyde Hawkins testified that he maintains a post office box at the Waldron post office, and that he picks up his mail from this box. The sheriff stated that normally he did not pick up his mail every day . . . he might go two or three days without picking up the mail if he is out of town . . . a short time before, he had been away for a week, and his mail was not touched . . . he did not remember whether he picked up mail on Friday, March 26 . . . on Saturday, March 27, prior to getting his mail, he had been in Sallisaw, Oklahoma . . . he obtained the mail from his box on March 27, around 5:00 P.M., and the summons and complaint, here under discussion, were picked up at that time . . . he forthwith served same on petitioners.

Respondents rely upon our holding in *King, Admr.* v. *Bean, Judge,* 239 Ark. 653, 391 S. W. 2d 24. The facts there reflected that Clayton King and Suzanne Seago, residents of Pulaski County, collided with an automobile occupied by residents of Conway County. The collision took place in Pulaski County, and King was killed. Suit was filed in Pulaski County by the King administrator and Suzanne Seago, and summonses were issued and directed to the sheriff of Conway County. These were sent

by registered mail. An attempt was made by postal employees to deliver the registered mail containing the summonses to the sheriff of Conway County on October 17, but that officer was not in his office, and the postman would not leave the registered mail without the sheriff personally signing for it; however, written notice was left at the sheriff's office, advising that the registered mail was at the post office. Written notice was again left a few days later. Eleven days after the first attempt to deliver the registered mail, the sheriff obtained it, and served the summonses the next day. In the meantime, the residents of Conway County involved in the wreck, on October 19, had instituted suit against the Pulaski County residents in Conway County, and summonses were placed in the hands of the sheriff of Pulaski County, and served on October 20. We were thus presented with the question of whether there was a delivery of the summonses issued out of the Pulaski Circuit Court to the sheriff of Conway County within the meaning of the statute when the postal employee attempted to deliver the registered mail on October 17 (this being two days before the actions were filed in Conway County). This court, after discussing the reasons of the 1961 General Assembly for amending the statute, held that it is not necessary that a summons be literally placed in the hands of the sheriff in a situation of this nature; rather, we stated:

"We hold that the summonses were placed in the hands of the sheriff, within the meaning of the statute, when the postal employee took the registered mail containing the summonses to the sheriff's office and attempted to deliver it, and upon being unable to do so, left a written notice that the registered mail was at the Post Office. It necessarily follows that petitioners' action was commenced in Pulaski County before their adversaries' action was commenced in Conway County."

It will be quickly noted that there is a distinct difference between the *King* case and the one at Bar. In the *King* case, we have positive proof of when the summons

was delivered to the sheriff. In the instant case, the *positive* proof is lacking. While the evidence tends to show that the respondents' letter was in the Scott County sheriff's post office box on Friday, March 27, and if not then, certainly on Saturday morning, March 28, there still is no *positive* proof that this is true. No witness could testify that this particular letter was placed in the box; no postal employee remembered this particular letter at all; no one could say of his personal knowledge that this particular letter was not placed in the Hawkins box at some time on Saturday afternoon. The testimony by the Scott County postmaster related only to the general practice of handling mail, and the general rules that were ordinarily observed. However, aside from that feature of the case, we think it impractical (even if the exact time that ordinary mail is placed in a sheriff's box could be determined) for us to hold that a summons is placed in the hands of a sheriff, within the meaning of the statute, the minute that a letter, containing a summons and complaint, is placed in the box. It would certainly appear that the sheriff should be given a reasonable time within which to pick up his mail. It cannot be contemplated that he would stand waiting at the box and get it as soon as it was placed therein. To use a hypothetical case, let us suppose that a plaintiff from "A" County files suit against a defendant in "B" County, obtains summons, mails it, and the summons is placed in the "B" County sheriff's box at 9:00 A.M. Suppose the party in "B" County institutes suit on the same day, obtains summons, and literally places it in the hands of the sheriff of "A" County at 9:10 A.M. As a matter of fairness, could it really be said that the party in "A" County placed the summons in the hands of the sheriff first? Of course, this situation could not arise for the reason that has already been mentioned, *i.e.*, there is no way to determine the exact hour and minute that ordinary mail is placed in a post office box.

It may well be true that in the present case, the summons and copy of complaint filed by appellee, were placed in the box on Friday, March 26, but no one testi-

fied, or could testify, that this was absolutely true. Mr. Henderson, when asked if he was saying that "Mr. Clyde Hawkins did receive a letter from the Circuit Clerk's office of Sebastian County on the 26th day of March, 1965," replied, "I am saying that I couldn't tell if he received one or not." When asked if he could say if Hawkins received one on the 27th day or March, Henderson likewise replied, "Again, I could not say."

The law favors certainty, and it would only be in a rare or unusual case, that proof could be offered of the exact time ordinary mail was placed in a post office box. It, of course, is also true that such a holding would absolutely conflict with the requirement of the statute, which provides that that court shall acquire jurisdiction "wherein a complaint was filed and a summons issued thereon, and *first placed in the hands* of the sheriff. * * * " In *King,* the registered mail was taken to the sheriff's office, and because of his absence, a notice was left. As stated in *King,*

" * * * There is no surer way a litigant could get a summons to the sheriff and be able to prove the time of delivery than to send it by registered mail. Here, the petitioner did that very thing."

We decline to enlarge or extend further the holding in *King.*

It follows that the court erred in entering its order (judgment) quashing the summons and dismissing the complaint in the Scott County case, and the judgment is reversed with directions to reinstate the complaint filed by petitioners.

It follows that the court also erred in entering its order in the Sebastian County case refusing to quash the summons and dismiss the complaint filed by respondents. This should have been done, for the court is without jurisdiction of the subject matter in Sebastian County.

Writ granted.